272 F.2d 401
 Mitchell S. MOHR, an individual trading and doing business as National Research Company, and Sydney Floersheim, an individual trading and doing business as S. Floersheim Sales Company, Petitioners,
v.
FEDERAL TRADE COMMISSION, Respondent.
 No. 16328.
 United States Court of Appeals Ninth Circuit.
 November 16, 1959.
 Rehearing Denied December 29, 1959.
 
 Murray M. Chotiner, Beverly Hills, Cal., for petitioner.
 Daniel J. McCauley, Jr., Gen. Counsel, Alan B. Hobbes, Asst. Gen. Counsel, Miles J. Brown, John W. Carter, Jr., Attys., Federal Trade Commission, Washington, D. C., for respondent.
 Before ORR, BARNES, and HAMLEY, Circuit Judges.
 HAMLEY, Circuit Judge.
 
 
 1
 This matter is before us on the petition of Mitchell S. Mohr and Sydney Floersheim to review and set aside an order of the Federal Trade Commission. In this order the Commission reopened a proceeding involving petitioners, and modified a cease and desist order which had been entered therein.
 
 
 2
 Petitioners argue here that on the showing made the Commission was without jurisdiction or authority to reopen the proceedings. They also contend that the Commission was estopped to modify the original order; that the modified order is too broad, considering the facts of the case and the scope of the act; that certain Commission findings are insupportable; and that evidence was erroneously admitted at the Commission hearing.
 
 
 3
 Mohr and Floersheim are engaged in the business of selling and distributing in interstate commerce so-called skip-trace forms. These forms are intended to be used by creditors and collection agencies in obtaining information concerning the whereabouts of defaulting debtors. The forms are sent to the last known address of the debtors in the hope that the debtors will return them with the desired information. If this information is supplied, the creditors or collection agencies are enabled to proceed with their collections.
 
 
 4
 In a complaint filed with the Commission on October 11, 1954, it was charged that the forms which Mohr and Floersheim were selling and distributing contained false and misleading statements and implications. It was alleged that as a result many persons were induced to give information which they otherwise would not have supplied.
 
 
 5
 Administrative proceedings were had, leading to the issuance of a decision and order sustaining the allegations of the complaint.[1] In the order Mohr and Floersheim were required to cease and desist from making certain specified representations, and to cease and desist from:
 
 
 6
 "Using or placing in the hands of others for use, any form, questionnaire, or other material, printed or written, which represents, directly or by implication, that the purpose for which the information is requested is other than that of obtaining information concerning delinquent debtors;"
 
 
 7
 The Commission order also required Mohr and Floersheim to file within sixty days a report indicating compliance with the cease and desist order. Petitioners did not petition this court to review the June 1, 1956, order. On July 26, 1956, they submitted a report of compliance to the compliance division, office of the Commission's general counsel. By letter dated August 1, 1956, the general counsel advised them that on the basis of the representations made in their report they were then in compliance with the cease and desist order.
 
 
 8
 On October 2 and 12, 1956, the Commission's assistant general counsel for compliance wrote to petitioners stating that their forms continued to create misunderstanding among some recipients. It was indicated that the matter would be reviewed by the Commission. On February 13, 1957, the Commission wrote to petitioners advising that all forms submitted with the July 26, 1956, report of compliance were in violation of the cease and desist order.
 
 
 9
 On February 6, 1958, the Commission ordered Mohr and Floersheim to show cause why the public interest does not require that the Commission reopen Docket No. 6236 and alter the quoted paragraph of the cease and desist order to read as follows:
 
 
 10
 "Using, or placing in the hands of others for use, any form, questionnaire, or other materials, printed or written, which do not clearly reveal that the purpose for which the information is requested is that of obtaining information concerning delinquent debtors."[2]
 
 
 11
 After Mohr and Floersheim had filed a response to this show cause order, a hearing was held before an examiner at which a stipulation of facts, exhibits, and oral testimony were received.[3] The exhibits included copies of forms then being sold and distributed by petitioners and certain sales materials. The oral testimony consisted of the testimony of twelve residents of the District of Columbia and the adjacent area. They were each shown copies of the forms being sold by petitioners, and testified that they could not determine therefrom why the information was being requested. None of these witnesses had actually received such a form through the mail. It was stipulated that during the first six months of 1958 approximately 700,000 forms were sold and approximately 80,000 of them were returned from the addressees.
 
 
 12
 On September 12, 1958, the hearing examiner made his report and recommendations and certified the record to the Commission. In his report the examiner stated that it was apparent from the testimony of the twelve witnesses that none of them was aware that the purpose of these forms was solely to locate delinquent debtors. The examiner concluded that the cards then being sold and distributed by petitioners fail to reveal the true purpose thereof, and "actually mislead and deceive the recipients to the extent that they do not know why the information is being requested." The examiner therefore recommended that paragraph 1 of the cease and desist order be modified as provided in the order to show cause, quoted above.[4]
 
 
 13
 On November 14, 1958, the Commission rendered an opinion in which it adopted the findings, conclusions, and recommendations of the hearing officer. On the same day the Commission ordered Docket No. 6236 reopened, and modified the order to cease and desist in the manner indicated. It is this order which is now under review.
 
 
 14
 Petitioners contend that on the showing made the Commission was without jurisdiction or authority to reopen the proceedings for the purpose of modifying the cease and desist order in the manner indicated.
 
 
 15
 The Commission reopened the proceeding and modified the cease and desist order on the ground that the public interest so required. This is one of the two statutory grounds for reopening such a proceeding and modifying a cease and desist order where, as here, the time had expired for reviewing that cease and desist order.[5]
 
 
 16
 Two reasons were given why the public interest required the reopening and modification. One of these was that the outstanding cease and desist order had given rise to confusion and controversy as to the compliance required.
 
 
 17
 If supported by the record, this is sufficient to sustain the finding that public interest required the reopening and modification. The public interest requires that a cease and desist order be clear and explicit in all of its terms. Otherwise it is ineffective in correcting the abuses with which it is intended to deal, and is unfair to the parties charged with compliance.
 
 
 18
 The record, as summarized above, amply supports the Commission's assertion that the outstanding order had given rise to confusion and controversy. The Commission states that the original intention, to which it still adheres, was to require discontinuance of the use of forms "which do not make the recipients aware of the true purpose for which information is being requested." But petitioners interpreted the original order as merely requiring that no false purpose be stated or implied.
 
 
 19
 That the Commission's general counsel originally interpreted the order in this same way is indicated by his letter of August 1, 1956, referred to above. In the Commission's brief filed in this review proceeding it is conceded that the cease and desist order is reasonably subject to the interpretation petitioners have given to it. In the face of this confusion and controversy as to the meaning of the original order, a clarification thereof would be in the public interest.
 
 
 20
 The second reason given by the Commission for requiring the reopening and modification was that the forms in current use by petitioners have the tendency and capacity to mislead and deceive persons to whom they may be sent.
 
 
 21
 Assuming that it is substantiated by the record, this too is a sufficient reason to support the finding that public interest required the reopening and modification. If experience with the forms in current use proved that they were deceptive, the public interest required that the proceeding be reopened and that the order be modified to prevent the use of such forms. Moreover, the statute is broad enough to authorize a requirement that the true purpose of the forms be affirmatively disclosed.[6]
 
 
 22
 The record also supports this reason for asserting that public interest required the action taken. The parties stipulated that of 700,000 forms sent out during a six-month period in 1958, 80,000 had been returned. The Commission could reasonably find, without the aid of evidence on the subject, that people do not ordinarily supply information when they know it will be used against them. See Bennett v. Federal Trade Commission, 91 U.S.App.D.C. 336, 200 F.2d 362. It was proper for the Commission to conclude from the substantial response to these forms that the effect of omitting an affirmative statement of purpose therefrom was to cause recipients to take action they would not otherwise have taken.[7]
 
 
 23
 The Commission also had before it the forms in actual use and was entitled to find from an examination of these forms that recipients would be thrown off guard as to the true purpose of the forms. Such a finding based on examination of the forms does not require the support of oral testimony or other evidence. See Dejay Stores v. Federal Trade Commission, 2 Cir., 200 F.2d 865, at page 867.
 
 
 24
 The public interest in terminating deceptive practices, even though such practices result in bringing delinquent debtors to task, it not here specifically questioned. But in any event the Comission's implied finding to this effect will not be judicially overturned.[8]
 
 
 25
 One may wonder why, if the Commission's original intention was to require an affirmative disclosure of purpose, it did not find a more forthright way to say so in its original cease and desist order. But ineptness of expression in the original order would not stand in the way of reopening the proceeding and modifying the order. It would in fact dictate that the order be clarified.
 
 
 26
 If it be assumed, on the other hand, that the Commission's original intention was not what it now says it was, this would likewise be immaterial. Experience under the cease and desist order, as revealed by the stipulated facts, showed that mere elimination of specific statements from the forms was not enough to stop the deception. The Commission was entitled to change its mind, if that is what it has done, as to the kind of a cease and desist order which was necessary to protect the public interest. The record of the entire Commission proceedings, including the original hearing, is before us, and factually supports the order here under review.
 
 
 27
 Petitioners contend that the Commission is estopped to modify its original order by its asserted failure to act within a reasonable time after accepting petitioners' compliance report. In this connection it is called to our attention that the compliance report is dated July 26, 1956, and was accepted by the office of the chief counsel on August 1, 1956, whereas it was not until February 6, 1958, that the show cause proceeding was instituted.
 
 
 28
 While the show cause proceeding was not instituted until the latter date, the Commission's compliance division began to question petitioners' compliance as early as October 2, 1956. In any event, however, section 5(b) of the act authorizes the Commission to reopen cease and desist proceedings and to alter, modify, or set aside such an order "at any time."[9] Hence estoppel could not be based upon passage of time, assuming that it could be, in any event, a defense available against the Commission.
 
 
 29
 The general counsel's letter of August 1, 1956, expressing satisfaction with the forms then being used by petitioners may have caused petitioners to acquiesce in the cease and desist order instead of seeking a review thereof. But they no longer acquiesce in that order as modified and are now exercising the right to review that order. Hence they are not aggrieved by the fact that they may have been originally lulled into inaction by the general counsel's letter of August 1, 1956.
 
 
 30
 Petitioners assert that the Commission's examiner erred in overruling objections to the admission of evidence. The reference here is to the twelve witnesses called by the Commission, who testified that they could not determine from an examination of the cards what purpose was intended to be served by the forms.
 
 
 31
 Whether or not this evidence was admissible, it was not prejudicial. It added nothing that could not have been determined by the Commission from an examination of the forms. The items of evidence tending to support the finding of continued deception were the forms themselves and the stipulated facts concerning the substantial response which they brought.
 
 
 32
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Order of June 1, 1956, In the Matter of Mitchell S. Mohr, et al., Docket No. 6236
 
 
 [2]
 This order to show cause contains several recitals, including the following:
 "Whereas, the Commission intended, and believed that it had, by said language, required respondents to discontinue use of skip-trace forms and materials which do not make the recipients aware of the true purpose for which information is being requested, thereby selecting, in the public interest, the remedy in its opinion most suitable to the correction of a deceptive act and practice charged in the complaint, and in which the respondents were found by the hearing examiner and the Commission to have engaged, namely, the obtaining of information concerning delinquent debtors by deceit, and
 "Whereas, it now appears to the Commission that there is reasonable doubt that the language of Paragraph 1 of said order has remedied the foregoing situation and will effectuate its said intent and purpose to remedy it, in that such language appears to be susceptible to the interpretation that it merely requires respondents to refrain from affirmatively stating any purpose, thereby permitting respondents to continue the use of skip-trace forms and materials which do not make the recipients aware of the true purpose for which the information is being requested * * *"
 
 
 [3]
 Except for their participation in the stipulation of facts, Mohr and Floersheim presented no evidence at the show cause hearing
 
 
 [4]
 Indicating the view that the public interest required reopening of the proceeding to make this change in the order, the examiner stated in his report:
 "Since the cards currently in use by Respondents have the tendency and capacity to mislead and deceive persons to whom they may be sent, and since Paragraph 1 of the Commission's outstanding order to cease and desist has given rise to confusion and controversy as to the compliance required, the public interest demands that said paragraph be revised to insure, beyond question, that such deception shall cease."
 
 
 [5]
 Under the stated circumstances, the reopening of such a proceeding is governed by the last sentence of section 5(b) of the act, 15 U.S.C.A. § 45(b), which reads in part as follows:
 "After the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time, the Commission may at any time, after notice and opportunity for hearing, reopen and alter, modify, or set aside, in whole or in part, any report or order made or issued by it under this section, whenever in the opinion of the Commission conditions of fact or of law have so changed as to require such action or if the public interest shall so require * * *."
 
 
 [6]
 L. Heller & Sons, Inc. v. Federal Trade Commission, 7 Cir., 191 F.2d 954; Haskelite Manufacturing Corp. v. Federal Trade Commission, 7 Cir., 127 F.2d 765
 
 
 [7]
 Indeed, it is apparent that petitioners have drawn the same conclusion, else they would not feel aggrieved by the requirement that the true purpose be revealed
 
 
 [8]
 See Dejay Stores, Inc., v. Federal Trade Commission, supra; Rothschild v. Federal Trade Commission, 7 Cir., 200 F.2d 39; Silverman v. Federal Trade Commission, 9 Cir., 145 F.2d 751
 
 
 [9]
 See footnote 5