353 U.S. 368 (1957)
SECURITIES AND EXCHANGE COMMISSION
v.
LOUISIANA PUBLIC SERVICE COMMISSION ET AL.
No. 466.
Supreme Court of United States.
Argued April 30, May 1, 1957.
Decided May 13, 1957.
CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT.
Thomas G. Meeker argued the cause for petitioner. With him on the brief were Solicitor General Rankin, David Ferber and Solomon Freedman.
Robert A. Ainsworth, Jr. argued the cause and filed a brief for the Louisiana Public Service Commission, respondent.
J. Raburn Monroe argued the cause for the Louisiana Power & Light Co., respondent. With him on the brief were J. Blanc Monroe and Monte M. Lemann.
Daniel James filed a brief for Middle South Utilities, Inc., respondent.
PER CURIAM.
On January 29, 1953, the Securities and Exchange Commission, pursuant to § 11 (b) (1) of the Public Utility Holding Company Act of 1935, 49 Stat. 820, 15 U. S. C. § 79k (b) (1), issued a notice and order for hearing directed *369 to Middle South Utilities, Inc., and its subsidiary, Louisiana Power & Light Company, upon the matter of "[w]hether Middle South and Louisiana [Power] should be required to take action to dispose of the gas utility assets and non-utility assets of Louisiana [Power] and, if so, what terms and conditions should be imposed in connection therewith." A copy of that notice and order for hearing was served upon those companies and also upon the Louisiana Public Service Commission by registered mail.
A full hearing was conducted by the S. E. C. at which Middle South and Louisiana Power appeared, adduced evidence, and presented arguments in support of their position that they should be permitted to retain Louisiana Power's gas properties as an additional integrated public utility system under the proviso to § 11 (b) (1) of the Act. The Louisiana Public Service Commission did not appear in that proceeding. On March 20, 1953, the S. E. C. issued its opinion, findings and order directing Middle South and Louisiana Power to divest themselves of all the non-electric assets of Louisiana Power "in any appropriate manner not in contravention of the applicable provisions of the Act," which gave them one year for compliance under the provisions of § 11 (c) of the Act, 49 Stat. 821, 15 U. S. C. § 79k (c). No petition to review that order was ever filed, and it ceased to be subject to judicial review with the expiration of the 60 days allowed to petition for that purpose by § 24 (a) of the Act, 49 Stat. 834, 15 U. S. C. § 79x (a), on May 19, 1953.
Thereafter, pursuant to § 11 (c) of the Act, the S. E. C. extended the time for compliance with its order to March 20, 1955. On November 10, 1954, Louisiana Power and its newly organized wholly owned subsidiary, Louisiana Gas Service Corp., filed a joint "application-declaration" *370 with the S. E. C., proposing the transfer by Louisiana Power of all its non-electric properties to Louisiana Gas as a step in compliance with the divestment order of March 20, 1953, and expressing the intention of Louisiana Power to effect divestment of the common stock of Louisiana Gas within 18 months from the date the latter might begin operations. Thereupon, the S. E. C. issued a notice advising interested persons, including the Louisiana Public Service Commission, of the filing of the "application-declaration" mentioned, and that they might request a hearing on that proposal. By telegram of December 22, 1954, the Louisiana Commission requested the S. E. C. to grant a hearing upon that "application-declaration" and to reopen the § 11 (b) (1) proceeding which had resulted in the divestment order of March 20, 1953. On December 27, 1954, it filed with the S. E. C. a formal petition accordingly, which it supplemented on January 3, 1955. Also, at the suggestion of the S. E. C., the Louisiana Commission submitted an offer of proof and a brief in support of its petition to reopen the divestment proceeding. The offer of proof did not indicate any change in conditions since the divestment order of March 20, 1953, but, rather, complained that the evidence in that proceeding had been incomplete and that the S. E. C. had acted, in part, upon an erroneous conception of the law. The S. E. C. heard oral argument upon the Louisiana Commission's petition to reopen. Thereafter, on September 13, 1955, it found that there were "no grounds for questioning . . . [its] earlier conclusion and no changed circumstances justifying a modification" of its divestment order of March 20, 1953, and it denied the petition to reopen that proceeding.
The Louisiana Commission then filed a petition in the Court of Appeals to review the order of September 13, 1955, denying its petition to reopen, and also therein *371 stated that it sought review of the divestment order of March 20, 1953. The S. E. C. moved the Court of Appeals to dismiss the petition for review upon the ground that the order of September 13, 1955, was not judicially reviewable and that the petition for review was in essence an attempt to appeal from the divestment order of March 20, 1953, long after the time allowed by law to do so had expired. The Court of Appeals held that the order of September 13, 1955, was reviewable, and it set aside that order. It also held that legal determinations made by the S. E. C. in its divestment order of March 20, 1953, were erroneous, and it, in effect, set aside that order too. 235 F. 2d 167. We granted certiorari. 352 U. S. 924.
The conclusion of the Court of Appeals that the order of September 13, 1955, was subject to judicial review was rested upon the last two sentences of § 11 (b) of the Act, 49 Stat. 820, 15 U. S. C. § 79k (b), reading: "The Commission may by order revoke or modify any order previously made under this subsection, if, after notice and opportunity for hearing, it finds that the conditions upon which the order was predicated do not exist. Any order made under this subsection shall be subject to judicial review as provided in section 79x of this title." It held that the Securities and Exchange Commission's order of September 13, 1955, denying the Louisiana Commission's petition to reopen the divestment proceeding was an "order" specifically made subject to judicial review by the quoted language.
We take a different view. We hold that the orders made judicially reviewable by the quoted language are the directory orders mentioned in, and authorized by, subsection (b) of § 11 of the Act, and orders which may "revoke or modify" any such order previously made under that subsection, and that the quoted language does not include an order merely denying a petition to reopen *372 § 11 (b) proceedings. It follows that the Securities and Exchange Commission's order of September 13, 1955, denying the Louisiana Commission's petition to reopen the divestment proceeding was not an order which was subject to judicial review, and the judgment of the Court of Appeals must accordingly be reversed.
It is so ordered.
MR. JUSTICE CLARK took no part in the consideration or decision of this case.