David RETTINGER, Petitioner,

v.

FEDERAL TRADE COMMISSION,
Respondent.

No. 193, Docket 31431.

United States Court of Appeals
Second Circuit.

Argued Feb. 7, 1968.

Decided April 9, 1968.

Martin H. Rettinger, New York City, for petitioner.

W. Risque Harper, Attorney, Federal Trade Commission (James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, on the brief), for respondent.

Before WATERMAN and FEINBERG, Circuit Judges, and BARTELS, District Judge.*

FEINBERG, Circuit Judge:

Petitioner is the president of Rettinger Raincoat Mfg. Co., Inc.,[1] a manufacturer of rainwear which has used the term "Goodyear" on its products continuously since 1911.[2] In 1956, following a com-

---

* Of the Eastern District of New York, sitting by designation.

[1] Until 1965, the firm was a partnership under the name "Rettinger Raincoat Mfg. Co." In this opinion, "Rettinger" refers to the partnership, the corporation or petitioner, as appropriate.

[2] In 1888, the Supreme Court held "Goodyear Rubber" to be generic and in the public domain. Goodyear's India Rubber

plaint by the Federal Trade Commission that use of "Goodyear" alone on a label might cause confusion with the Goodyear Tire & Rubber Company, Rettinger and the Commission negotiated a consent order. This provided that Rettinger cease and desist from:

Using the name "Goodyear" unless in immediate connection therewith the name of the person, firm or corporation manufacturing such merchandise and the fact that such person, firm or corporation is the manufacturer thereof, is clearly and conspicuously revealed.

Shortly thereafter, Rettinger submitted to the Commission redesigned labels which read "Goodyear Manufactured by Lucky Rainwair"; "Lucky Rainwair" is a Rettinger trade name. In a letter to Rettinger, the General Counsel of the Commission stated that this designation was "in compliance with the order."

Starting in 1958, Rettinger began importing from Japan rainwear made to its specifications; this merchandise has, by now, become the bulk of its business. Ten years after the consent order, following a Commission investigation and a request by Rettinger for reaffirmation of the 1956 compliance letter, the Commission advised Rettinger:

To be in compliance the respondent [Rettinger] must, in connection with all products manufactured by Rettinger, use the name "Rettinger Raincoat Mfg. Co., Inc." or "Rettinger Raincoat Mfg. Co." and, in connection with all products manufactured for Rettinger by another firm, respondent must use the name of the firm which manufactured the product.

The effect of this new interpretation of the earlier consent order was to require Rettinger, if it used the name "Goodyear," to add (1) on domestic goods, not "Lucky Rainwair," but "Rettinger Raincoat Mfg. Co., Inc." and (2) on imported goods, not "Lucky Rainwair," but the name of the foreign manufacturer.

Rettinger objected, primarily to the latter requirement. In 1965, he had turned down an offer by Goodyear Tire to pay him $50,000 to stop using "Goodyear" on his labels. He chose instead to negotiate a settlement which permitted him to use that name until Goodyear Tire succeeded in stopping a major Rettinger competitor from similar use of the term.[3] Under the new Commission interpretation, Rettinger was thus faced with an allegedly unfair choice. He could stop using the term "Goodyear" while his competitor continued to use it, thus losing the benefit of the settlement with Goodyear Tire without any compensation, or he could disclose the names of his Japanese suppliers to his competitors and customers. If he disclosed, the competitors and customers would probably begin buying direct from Japan. Rather than choose, Rettinger sought relief before the Commission by moving for reopening of the 1956 proceeding and modification of the order so that it would prohibit:

Using the name "Goodyear" unless in immediate connection therewith the name "Lucky Rainwair" is clearly and conspicuously revealed.

The Commission denied the motion, Commissioner Elman dissenting, and Rettinger petitions this court to review that denial.

Rettinger's most substantial contention is that the Commission has been arbitrary and capricious and has acted in conflict with the 1956 consent order in formulating its new definition of compliance. Rettinger's argument is as follows: The consent order was based upon a complaint which charged only that the public was being misled by Rettinger's

Glove Mfg. Co. v. Goodyear Rubber Co., 128 U.S. 598, 602, 604, 9 S.Ct. 166, 32 L.Ed. 535 (1888).

**3.** Goodyear Tire & Rubber Co. v. Rettinger Raincoat Mfg. Co., Dkt. No. 65 Civ. 493 (S.D.N.Y., July 26, 1965). See also Goodyear Tire & Rubber Co. v. Weather-Rite Sportswear Co., Dkt. No. 65 Civ. 476 (S.D.N.Y., filed Feb. 15, 1965); Goodyear Tire & Rubber Co. v. H. Rosenthal Co., 246 F.Supp. 724 (D.Minn.1965).

"Goodyear" label into thinking that Rettinger rainwear was manufactured by Goodyear Tire. The subsequent compliance letter from the Commission's General Counsel accepted proposed labels which did no more than eliminate the confusing use of "Goodyear." Thus, the order only required the use of some identification other than "Goodyear," so that the public would not be misled. And if the order is interpreted in light of the complaint[4] and the compliance letter, the order was consented to by the Commission with no thought of barring use of "Lucky Rainwair" or any other name as deceptive for concealing the actual manufacturer's name. Yet the Commission, with its severe civil penalty sanctions,[5] now demands that Rettinger act as if the consent order not only considered this second possible deception, but also decided the question and barred the use of Rettinger's trade name. By imaginative construction, the Commission is attempting to coerce Rettinger's conduct without the requisite due process; no hearing has ever been held on whether use of "Lucky Rainwair" is deceptive because it does not disclose the name of the actual manufacturer. Cf. United States v. St. Regis Paper Co., 355 F.2d 688, 697 (2d Cir. 1966). Rettinger also claims that the extension of the order beyond the consent which created it is doubly improper where the Commission has not disturbed the identical conduct of Rettinger's competitor. See generally Rabiner & Jontow, Inc. v. FTC, 386 F.2d 667 (2d Cir. 1967), cert. denied, 390 U.S. ——, 88 S.Ct. 1245, 20 L.Ed.2d 103 (1968). Finally, Rettinger points to Commissioner Elman's dissent and contends that the public interest is not served by Commission intervention in what is "essentially a private controversy" between Goodyear Tire and a small company, Rettinger. For these reasons, Rettinger urges us to set aside the Commission's order denying the motion to reopen and to direct the Commission to modify the consent order.

The Commission responds that its new interpretation is "more nearly consistent" with the 1956 order than the originally accepted compliance; the rainwear is manufactured by Rettinger and its Japanese suppliers, not by "Lucky Rainwair." Since the Commission may properly require disclosure of a manufacturer's name in any case, Rettinger is not prejudiced by enforcement of the consent order. In addition, the consent order contained a stipulation of all jurisdictional facts, one of which was that the proceeding was in the public interest; that benefits may accrue to Goodyear Tire is irrelevant. Finally, the Commission notes that even if others have not been prosecuted for improper conduct, Rettinger has no right to deceive the public.

■■ Rettinger offers appealing arguments, but we reluctantly conclude that we do not have jurisdiction to consider them at this time. For jurisdiction in this court, Rettinger relies first on the Federal Trade Commission Act. Section 5(b) of that Act, 15 U.S.C. § 45(b), contains the review provision applicable to motions to reopen before the Commission:

> After the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time, the Commission may at any time, after notice and opportunity for hearing, reopen and alter, modify, or set aside, in whole or in part, any report or order made or issued by it under this section, whenever in the opinion of the Commission conditions of fact or of law have so changed as to require such action or if the public interest shall so require: *Provided, however,* That the said person, partnership, or corporation may, within sixty days after service upon him or it of said report or order entered after such a reopening, obtain a review thereof in the appropriate

---

4. As suggested in paragraph nine of the consent order. See FTC Rules of Practice § 2.3, 16 C.F.R. § 2.3 (1967).

5. 15 U.S.C. § 45(*l*).

court of appeals of the United States, in the manner provided in subsection (c) of this section.

By its terms, section 5(b) is not applicable to this case; the Commission found that no changes of either fact or law had occurred sufficient to warrant reopening the proceeding, and refused to do so. Consequently, the necessary prerequisite to review, a "report or order entered after such a reopening," does not exist. Where no reopening has been granted, review has been denied both under this statute, see Martin Marietta Corp. v. FTC, 376 F.2d 430 (7th Cir.), cert. denied, 389 U.S. 923, 88 S.Ct. 237, 19 L.Ed. 2d 265 (1967), and under another enactment containing similar language. See SEC v. Louisiana Pub. Serv. Comm'n, 353 U.S. 368, 77 S.Ct. 855, 1 L.Ed.2d 897 (1957) (Public Utility Holding Company Act of 1935, 15 U.S.C. § 79k(b)). Petitioner contends that although there has been no reopening in form there has in fact been a reversal of position by the Commission. However, while it may be true that the Commission has changed its interpretation of what constitutes compliance under the 1956 consent order, we cannot in good conscience characterize that as a reopening of the 1956 proceedings envisaged by section 5(b). We are thus left with no jurisdiction to review under the Federal Trade Commission Act, since we see no other applicable procedure under that Act to review at this time this twelve-year old consent order.

■■ Petitioner also relies upon the Administrative Procedure Act. Under what is now 5 U.S.C. §§ 701–706, Rettinger may be entitled to obtain judicial review now of a Commission interpretation which is allegedly arbitrary and capricious. See Jaffe, Judicial Control of Administrative Action 336 (1965). That does not end the matter, however.

In Cappadora v. Celebrezze, 356 F.2d 1 (2d Cir. 1966), upon which Rettinger relies, review was sought in a civil action brought in the district court; here, in contrast, Rettinger seeks review from the circuit court in the first instance. The difference is fatal to his position. Where no statute adequately specifies the proper procedure and court for review, the APA, 5 U.S.C. § 703, provides for review by

> any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction.

This statute apparently intends a district court proceeding.[6] See Schwab v. Quesada, 284 F.2d 140, 143 (3d Cir. 1960); City of Dallas v. Rentzel, 172 F.2d 122 (5th Cir.) (per curiam), cert. denied, 338 U.S. 858 (1949); 3 Davis, Administrative Law § 23.02 (1958); cf. Final Report of the Attorney General's Committee on Administrative Procedure 92–95 (1941). Therefore, Rettinger's remedy under the APA, if remedy there be,[7] is in the district court, and the gravamen of his complaint there, as we understand it, would be that the Commission arbitrarily changed its definition of compliance. We are aware that it is possible for petitioner to await a civil suit by the Commission to enforce its present interpretation of the 1956 order. In view of the financial risks involved, we understand why Rettinger would rather avoid this course, but we do note that in such a proceeding petitioner apparently could litigate the meaning of the 1956 order. See, e. g., United States v. Vulcanized Rubber & Plastics Co., 288 F.2d 257 (3d Cir.), cert. denied, 368 U.S. 821, 82 S.Ct. 38, 7 L.Ed.2d 26 (1961); Vulcanized Rubber & Plastics Co. v. FTC, 103 U.S.App.D.C. 384, 258 F.2d 684 (D.C.Cir.1958); Austern, Five Thousand Dollars A Day, 21 A.B.A. Antitrust Sec-

---

6. We do not believe any contrary implications can be drawn from Szostak v. Railroad Retirement Bd., 370 F.2d 253 (2d Cir. 1966).

7. The Commission contends, *inter alia,* that its interpretation of the order in its advisory letter is not subject to judicial review, a proposition that is not immediately appealing on this record.

**458**

tion 285, 319 n. 102 (1962). The district court should decide in the first instance the effect that possibility may have upon the availability of earlier relief under the APA. Cf. Elmo Div. of Drive-X Co. v. Dixon, 121 U.S.App.D.C. 113, 348 F.2d 342 (D.C.Cir.1965), reopened sub nom. Elmo Co., 3 Trade Reg.Rep. ¶ 17,777 (Nov. 18, 1966), aff'd Elmo Co. v. F. T. C., 389 F.2d 550 (D.C.Cir.1967). See also Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 174, 87 S.Ct. 1526, 1530, 18 L.Ed.2d 704, 709 (1967) (Fortas, J., dissenting).

Petition to review dismissed, without prejudice to a request by petitioner for relief in the district court.