Michael J. **CLARK,** Petitioner,

v.

**COMMODITY FUTURES TRADING COMMISSION,** Respondent.

**Docket No. 98–4291.**

United States Court of Appeals, Second Circuit.

Submitted Nov. 18, 1998.

Decided Feb. 17, 1999.

---

Michael J. Clark, Eatontown, NJ, pro se.

Janene M. Smith, Commodity Futures Trading Commission, Washington, DC (Glynn L. Mays, Commodity Futures Trading Commission, Washington, DC, of counsel), for respondent.

BEFORE: MINER, CALABRESI, and SACK, Circuit Judges.

MINER, Circuit J.

Respondent Commodity Futures Trading Commission (the "Commission") moves to dismiss, for lack of subject matter jurisdiction, a petition for review filed in this Court by petitioner Michael J. Clark. By the petition, Clark seeks review of an Opinion and Order of the Commission affirming a disciplinary decision of the Commodity Exchange, Inc. ("COMEX"). The disciplinary decision determined that Clark had violated certain Rules of the COMEX and imposed upon him a fine, a suspension from trading and a cease and desist order. The Commission contends that only a district court may undertake the review of a Commission order approving a disciplinary decision issued by an exchange and that this Court therefore is without jurisdiction over Clark's petition. For the reasons that follow, we reject the Commission's contention and conclude that the petition is properly before us. We therefore deny the motion to dismiss.

## BACKGROUND

Clark was a floor broker and member of the COMEX, which became a wholly owned subsidiary of the New York Mercantile Exchange ("NYMEX") after the events giving rise to the disciplinary proceeding but prior to the issuance of the disciplinary decision. The COMEX is an exchange designated by the Commission for the trading of futures and option contracts relating to particular commodities. As a floor broker and member of the COMEX, Clark was entitled to trade for his own account as well as for customer accounts, subject to the Rules of the COMEX.

On March 11, 1991, the COMEX Committee on Business Conduct issued a complaint charging, *inter alia*, that Clark and Dominick Auciello, another COMEX broker, executed

ten trading sequences between December 27, 1989 and January 2, 1990 in which they engaged in prearranged, noncompetitive trading; executed trades for accounts in which they had a direct interest opposite a customer order; withheld customer orders from the floor to the benefit of other floor members; and failed to record trades on their trading cards in the proper chronological order of occurrence. According to the complaint, the charged conduct on the part of Clark constituted violations of the following COMEX Rules: Rule 4.21 (Noncompetitive Trading); Rule 4.24(e) (Improper Cross Trading); Rule 4.27 (Prearranged Trading); Rule 4.34 (Withholding Orders); and Rule 4.80 (Improper Carding of Trades).

A hearing on the charges was conducted before the Supervisory Committee "B" Hearing Panel ("Hearing Panel") of the COMEX on December 4 and 5, 1991. After taking testimony and receiving exhibits, the Hearing Panel rendered a decision on June 3, 1992 finding that Clark and Auciello had engaged in five of the noncompetitive trading sequences alleged in the complaint. The Hearing Panel concluded, *inter alia,* that Clark and Auciello had knowingly and intentionally engaged in prearranged trading, at times to their customers' disadvantage. The Hearing Panel further concluded that Clark altered his trading cards in an attempt to conceal his dishonesty, withheld customer orders from the market for Auciello's benefit, and traded opposite his customer orders. Based upon its findings and conclusions, the Hearing Panel imposed upon Clark a fine of $25,000, a 3–month suspension from trading and a cease and desist order.

Clark thereafter filed a timely request for review with the Appeal Panel of the COMEX Board of Governors, and review was granted. The Appeal Panel heard oral argument on August 18, 1992 but did not issue a decision until September 12, 1996. The Hearing Panel determination of liability was affirmed on a finding that there was ample support in the record for the ruling. The sanctions imposed by the Hearing Panel also were affirmed, and Clark's challenge to the timeliness of the hearing was rejected. There followed an appeal to the Commission from the decision of the Appeal Panel. The Commission denied Clark's application for a stay of sanctions pending appeal.

In its Opinion and Order dated July 22, 1998, the Commission affirmed the disciplinary action taken by the COMEX in all respects:

> We affirm the exchange's decision in its entirety because there is substantial evidence to support the exchange's liability findings. In addition, we find that, even though some of the exchange procedures were not fully consistent with applicable COMEX rules, Clark ... [has] not demonstrated sufficient prejudice to warrant vacating the Board of Governors' decision. Finally, we conclude that, although NYMEX and Clark's former counsel entered into an agreement prohibiting Clark's former counsel from representing Clark in this matter, the agreement did not deny Clark his due process rights or prejudice him in pursuing his appeal to the Commission.

In his petition to this Court, filed on August 10, 1998, for review of the Opinion and Order of the Commission, Clark principally contends that he was prejudiced by an illegal agreement between NYMEX, the parent of COMEX, and his former counsel. Clark has asserted jurisdiction in this court variously under the Commodity Exchange Act ("CEA") § 6(c), as amended, 7 U.S.C. §§ 9, 13b (1998 Supp.) and CEA § 17, as amended, 7 U.S.C. § 21 (1980 & 1998 Supp.). In moving to dismiss the petition for lack of jurisdiction in this court, the Commission argues that review of a Commission order affirming an exchange disciplinary order is governed by CEA § 8c, as amended, 7 U.S.C. § 12c (1998 Supp.). This last provision, according to the Commission, vests jurisdiction in the district court although it does not do so specifically.

## DISCUSSION

In his petition, Clark refers to CEA § 6(c) as the basis for the jurisdiction of this Court. However, sections 6(c) and (d) of the CEA, 7 U.S.C. §§ 9, 13b, provide for judicial review in the appropriate circuit courts of appeals only of Commission orders that impose such

sanctions as trading prohibitions, cease and desist orders and civil monetary penalties in the first instance. These provisions do not pertain to review of the Commission's decisions that are issued on appeal from exchange disciplinary orders. In response to the motion to dismiss, Clark contends that jurisdiction lies with this Court by virtue of CEA § 17, 7 U.S.C. § 21. CEA § 17(i)(4) provides that "[a]ny person aggrieved by a final order of the Commission entered under this subsection may file a petition for review with a United States court of appeals in the same manner as provided in section [6(c) ]." The problem with this provision as a basis for jurisdiction is that the "subsection" referred to in the text pertains to actions taken by entities known as registered futures associations. Apparently, there has been only one organization, the National Futures Association, that has ever been designated a registered futures association. *See* H.R.Rep. No. 97–565, Part I, at 41 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3871, 3890. Such an association is classified as a commodity industry self-regulating organization, similar to the National Association of Securities Dealers under the federal securities laws. *See id.* The COMEX does not fall within that classification.

■ The proper authority for judicial review of a Commission decision in regard to exchange disciplinary proceedings is found in CEA § 8c, 7 U.S.C. § 12c(b) & (c) and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 703 (1994). The CEA provides as follows:

The Commission may affirm, modify, set aside, or remand any exchange decision it reviews ... after a determination on the record whether the action of the exchange was in accordance with the policies of this chapter. *Subject to judicial review,* any order of the Commission ... shall govern

the exchange in its further treatment of the matter.

7 U.S.C. § 12c(c) (emphasis added). The APA provides the following:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

5 U.S.C. § 702. The APA further states:

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action ... in a court of competent jurisdiction.

5 U.S.C. § 703.[1] It is apparent that neither statute supplies the specific answer to the question now before us: What court has jurisdiction to review the Commission Opinion and Order for which the petitioner in this case seeks review?

The formulation of the proper answer to the foregoing question must begin with the teachings of the Supreme Court in *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). In *Florida Power,* the Court determined that the court of appeals had initial subject matter jurisdiction over an order of the Nuclear Regulatory Commission denying a citizen petition for a proceeding to suspend the operating license for a nuclear reactor. *See id.* at 739, 105 S.Ct. 1598.

Disagreeing with the lower court, the Court found ambiguous the Atomic Energy Act provision for review of final orders entered in specified proceedings. *See id.* at 737–40, 105 S.Ct. 1598; 42 U.S.C. § 2239. There was no dispute that such orders were to be reviewed in the courts of appeals as provided in the Hobbs Act, 28 U.S.C. § 2341 *et seq.,* but the issue to be resolved was

---

1. The APA does not, of course, itself confer jurisdiction to review the decision of an administrative agency. *See Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). District courts, unlike courts of appeals, require no further statutory authority to hear appeals from agency decisions than the federal question jurisdiction set forth at 28 U.S.C. § 1331. Thus, in the absence of a statute bestowing judicial review, the only federal court with jurisdiction to review an agency decision is the district court. In the case of a statutory provision such as CEA § 8c, however, which ambiguously refers to "judicial review" without specifying which court should conduct such review, it is unclear if the statute is granting jurisdiction to the courts of appeals or referring to the district court's extant jurisdiction.

whether the order in question was entered in a "proceeding" within the meaning of 42 U.S.C. § 2239(a). *See Florida Power,* 470 U.S. at 741–42, 105 S.Ct. 1598. The Court described the factors that guided its resolution of the issue as follows:

> Because we find the statute ambiguous on its face, we seek guidance in the statutory structure, relevant legislative history, congressional purposes expressed in the choice of Hobbs Act review, and general principles respecting the proper allocation of judicial authority to review agency orders.

*Id.* at 737, 105 S.Ct. 1598.

While the Court found indications in the legislative history that Congress intended to confer initial subject matter jurisdiction in the courts of appeals, it also noted that its conclusion was "in harmony with Congress' choice of ... review for ... licensing proceedings ... and is consistent with basic principles respecting the allocation of judicial review of agency action." *Id.* at 746, 105 S.Ct. 1598. The Court noted that "[t]he factfinding capacity of the district court is ... typically unnecessary to judicial review of agency decision-making." *Id.* at 744, 105 S.Ct. 1598. In the case before us, factfinding clearly is unnecessary. In arriving at its conclusion, the Court made the following significant statement:

> Absent a firm indication that Congress intended to locate initial APA review of agency action in the district courts, we will not presume that Congress intended to depart from the sound policy of placing initial APA review in the courts of appeals.

*Id.* at 745, 105 S.Ct. 1598.

In any event, the statute governing judicial review in the matter before us is ambiguous, since it provides for judicial review but fails to specify the court in which such review will take place. This alone favors the location of jurisdiction in this Court. *See National Parks & Conservation Ass'n v. Federal Aviation Admin.,* 998 F.2d 1523, 1529 (10th Cir.1993) (where there is an "ambiguity as to whether jurisdiction lies with a district court or with a court of appeals[,] we must resolve that ambiguity in favor of review by a court of appeals") (quoting *Subur-ban O'Hare Comm'n v. Dole,* 787 F.2d 186, 192 (7th Cir.1986)).

In the absence of a firm indication by Congress of an intention to vest initial review of decisions of the Commission affirming disciplinary actions of the COMEX in the district court, and in the face of an ambiguous statute, we are constrained by *Florida Power* to accept jurisdiction in this Court. *See Conoco, Inc. v. Skinner,* 970 F.2d 1206, 1214 (3d Cir.1992) (espousing "a liberal construction of [circuit court] jurisdiction over agency actions absent clear and convincing evidence of a contrary congressional intent") (quotation omitted). This is especially true, in accordance with *Florida Power,* because of the extensive jurisdiction conferred upon courts of appeals to review other decisions and orders of the Commission relating to its regulation of exchanges. Locating jurisdiction in this Court therefore is in harmony with the congressional scheme of regulation of commodity exchanges and consistent with basic principles regarding allocation of judicial review of agency actions. There certainly is no clear and convincing evidence that Congress intended the phrase "judicial review" in CEA § 8c to confer upon district courts the jurisdiction to review decisions of the type sought to be reviewed here.

In support of its motion to dismiss, the Commission cites our opinions in *Association of Nat'l Advertisers v. FTC,* 565 F.2d 237, 239 (2d Cir.1977) and *Rettinger v. FTC,* 392 F.2d 454, 457 (2d Cir.1968). We begin our examination of these cases by noting that we did not have the benefit of the Supreme Court's teaching in *Florida Power* when these cases were decided. Moreover, these cases are factually distinct from the case at bar, and we have more recently expressed our preference for direct appellate review. *See Henderson v. INS,* 157 F.3d 106, 119 n. 9 (2d Cir.1998) ("[A]ppeal of agency decisions directly to the courts of appeals is the standard mode of review of administrative actions.").

In *Association of National Advertisers,* we held that a denial of a motion to expunge certain documents from the record was not a final "rule" subject to review in the court of

appeals within the meaning of the Federal Trade Commission Act. *See* 565 F.2d at 239 (interpreting 15 U.S.C. § 57a). We therefore examined the issue of review jurisdiction under the general provisions for judicial review contained in the APA and found no jurisdiction for lack of final agency action. *See id.* at 239–40. Because we determined that there was no final agency action, our premise that review would be had in the district court was not necessary to the disposition of the case.

In the case at bar, the determination of the Commission was final in all respects and followed factfinding and appeal panel review in the COMEX. The Commission conducted a further review of the COMEX determination and appointed an administrative law judge to conduct a hearing and decide the issue of illegal agreement between Clark's former counsel and NYMEX before issuing its final Opinion and Order. The Commission's final action in this case was taken on the basis of a complete administrative record, while the action complained of in *Association of National Advertisers* came in the form of an interlocutory and non-reviewable decision of the Federal Trade Commission that was not based on a complete and final administrative record.

Similarly, in *Rettinger,* we ruled that jurisdiction was lacking to review a Federal Trade Commission order denying a motion to reopen a proceeding. *See* 392 F.2d at 457–58. The gravamen of petitioner's claim was that the FTC had arbitrarily changed its interpretation of a previously entered consent decree and that the new interpretation improperly extended the provisions of the decree. *See id.* at 457. After first rejecting petitioner's attempt to characterize the denial as an "order entered after reopening," in which case we would have had jurisdiction to review under section 5(b) of the Federal Trade Commission Act, we referred to the general APA provisions for review. *See id.*

We were of the view that petitioner's claim would be substantively identical to its defense of an FTC enforcement action, and because such an enforcement action must be brought in the district court, we lacked jurisdiction to review the petition. *See id.* at 457–58. It would have been incongruous to insist that the FTC litigate its enforcement action in the district court but allow the petitioner to litigate a functionally identical claim in our Court. In our case, other remedial provisions of the CEA allow for review of Commission disciplinary orders in the circuit courts, *see, e.g.,* CEA §§ 6(c), 17, 7 U.S.C. §§ 9, 21, and there is no incongruity in finding jurisdiction in the circuit courts.

We observed that "[w]here no statute adequately specifies the proper procedure and court for review, the APA ... intends a district court proceeding." *Rettinger,* 392 F.2d at 457 (citation omitted). Accordingly, we held that petitioner's "remedy under the APA, if remedy there be, is in the district court." *Id.* The CEA, by contrast, provides for "judicial review" but leaves ambiguous whether the court of appeals or the district court is to perform it. It is that ambiguity combined with our consideration of the *Florida Power* factors that lead us to conclude that, here, jurisdiction lies in the courts of appeals. We therefore hold that circuit courts are empowered to review orders of the Commission relating to disciplinary actions, whether these orders are issued by the Commission in the first instance or on appeal from one of the exchanges over which the Commission exercises jurisdiction.

Finally, we note our respectful disagreement with the analysis of our sister circuit in *Jaunich v. United States Commodity Futures Trading Commission,* 50 F.3d 518 (8th Cir.1995), a case on all fours factually with the case before us. Jaunich was a member and floor broker of the Minneapolis Grain Exchange, which imposed upon him a fine and suspension from trading, after a hearing, for violations of various trading rules. *See id.* at 518–19. The Commission affirmed after a slight revision of the penalties on remand. *See id.* at 520. Jaunich's petition for review of the Commission's decision was rejected by the Eighth Circuit for want of subject matter jurisdiction. *See id.* at 522. The Circuit Court transferred the case to the appropriate district court under the authority of 28 U.S.C. § 1631. *See id.*

After reviewing the pertinent provisions of the CEA, the APA and *Florida Power,* the court concluded "that Congress has provided a 'firm indication' that initial review in this case belongs in the district court." *Id.* at

521. The Eighth Circuit referred to legislative history as authority for the firm indication required by *Florida Power*. However, this legislative history involves the *failure* of Congress to act when presented with a general provision requiring either direct review in the courts of appeals of all Commission orders or a specific provision for direct review in the courts of appeals of orders entered on appeals from exchange disciplinary proceedings. *See id.* at 522. We simply do not agree that this history provides a firm indication of an intention to place jurisdiction for initial review of Commission orders relating to disciplinary determinations of the various exchanges in the district courts.

We think that the judicial review provision in the CEA should be classified as ambiguous and that the factors identified in *Florida Power* for resolving ambiguity in cases of this nature compel the decision we reach. The *Jaunich* court relied on "relevant legislative history" to provide a "firm indication" of congressional intent, and noted that its conclusion was not altered by consideration of the *Florida Power* factors. That court did note its agreement with the proposition that the construction of the statute "results in different courts reviewing functionally equivalent proceedings—direct review in the courts of appeals under 7 U.S.C. § 9 for exchange disciplinary proceedings initiated by the [Commission] and initial review in the district court under 7 U.S.C. § 12c for exchange disciplinary proceedings initiated by the exchange and reviewed by the [Commission]." *Jaunich*, 50 F.3d at 522. While acknowledging that such "procedural conundrums" should be avoided and that "functionally similar" things should be reviewed in a similar manner, the *Jaunich* court found it "clear" that the procedural irregularity was intended by Congress. *See id.* Because we cannot make such a finding, we are constrained to disagree with the proposition.

## CONCLUSION

In accordance with the foregoing, the motion is denied.