**Stephen PICCOLO, Petitioner,**

v.

**COMMODITY FUTURES TRADING COMMISSION and Coffee, Sugar & Cocoa Exchange, Inc., Respondents.**

**Docket No. 03–40399.**

United States Court of Appeals, Second Circuit.

Argued May 10, 2004.

Decided Nov. 2, 2004.

James Kirshner, Brooklyn, N.Y. (Lance Lazzaro and Lazzaro & Gregory, P.C., of counsel), for Petitioner.

William S. Liebman, Assistant General Counsel, Commodity Futures Trading Commission, Washington, DC (Patrick J. McCarty, General Counsel, Kirk Manhardt, Deputy General Counsel, of counsel), for Respondent Commodity Futures Trading Commission.

Jason Jurgens, New York, N.Y. (H. Peter Haveles, Jr., Cadwalader, Wickersham & Taft, of counsel), for Respondent Coffee, Sugar & Cocoa Exchange, Inc.

Before WALKER, Chief Judge, and OAKES and POOLER, Circuit Judges.

PER CURIAM.

Stephen Piccolo, a clerk at the Coffee, Sugar & Cocoa Exchange, Inc. ("Exchange" or "CSCE"), petitions this Court to review the order of the Commodity Futures Trading Commission ("Commission" or "CFTC") summarily affirming the decision of the Executive Floor Committee of the Exchange, which found that Piccolo's involvement in a physical altercation

outside the Exchange warranted suspending his registration for six months.

Piccolo argues the decision and order affirming it should be vacated because (a) the proceeding against him was a disciplinary action conducted in violation of Exchange and Commission rules; (b) the Exchange lacked jurisdiction to discipline him because his conduct occurred outside Exchange property after close of trading; (c) the Exchange abused its discretion in imposing a sanction disproportionate to his violation; and (d) the decisions below are unsupported by the weight of the evidence.

■ We have jurisdiction to review the CFTC order pursuant to 7 U.S.C.A. §§ 9 and 12c(c) (2004). *See Clark v. CFTC,* 170 F.3d 110, 113–14 (2d Cir.1999) (resolving ambiguity in § 12c(c) in favor of jurisdiction in the circuit courts of appeal). The Commission's factual findings, "if supported by the weight of evidence, shall ... be conclusive." 7 U.S.C.A. § 9 (2004). Legal questions are subject to plenary review, *see Armstrong v. CFTC,* 12 F.3d 401, 403 (3d Cir.1993), but where a question implicates Commission expertise, we defer to the Commission's decision if it is reasonable. *Vercillo v. CFTC,* 147 F.3d 548, 552 (7th Cir.1998).

For the reasons that follow, we affirm the order.

## I. Background

Stephen Piccolo was registered at the Exchange as a clerk for Tradex Futures, Inc., a company run by his brother, John Piccolo.

On September 17, 2002, John and Stephen Piccolo received a Notice of Hearing which stated that pursuant to the Coffee, Sugar & Cocoa Exchange's Floor Trading Rule 3.21(d), "the physical altercation in which Steven Piccolo, a clerk registered by you on the Coffee, Sugar & Cocoa Exchange, Inc., was involved on Tuesday, September 10, 2002 gives rise to the need for action by the Executive Floor Committee to determine if his continued registration is contrary to the best interests of the Exchange." The notice further stated that the hearing was scheduled for September 25, 2002, and that in accordance with Rule 3.21, a "clerk shall be allowed to be represented by legal counsel or any other representative of his choosing and, either personally or through such representative, to present witnesses and documentary evidence and to cross-examine witnesses." A copy of Rule 3.21 was enclosed.[1] The notice did not specify any acts or conduct by Stephen Piccolo, stating only that he "was involved" in "the physical altercation" on September 10, 2002, and it did not state whether the Board intended to call witnesses. The enclosed copy of Rule 3.21 stated that "[t]he decision of the Executive Floor Committee shall not be subject to appeal." Floor Trading Rule 3.21(d)(7).

Stephen appeared at the hearing on September 25 with his brother John, but without legal counsel. Six witnesses were present to testify on behalf of the Committee. The record of the hearing does not reflect the substance of Stephen Piccolo's request to continue the hearing to permit him to obtain counsel, and begins with the words of a Committee Panel Member's rejection of that request on grounds that "the letter that was sent to you on September 17th, stated clearly your options for this hearing." John Piccolo represented Stephen at the hearing and cross-examined the witnesses who testified against his brother.

---

**1.** A copy of Coffee, Sugar & Cocoa Exchange, Inc., Floor Trading Rule 3.21, Clerk Qualification Requirements, Registration Procedures, and Trading Prohibitions, appears as an attachment to Exhibit B of the parties' Joint Appendix.

According to the decision of the Executive Floor Committee, witnesses testified that during the work day, preceding the physical altercation outside the Exchange at the close of trading, there was a price dispute in the coffee ring involving John Piccolo and another Exchange member, Alex Farganis, Sr. Alex Farganis, Sr. testified that John Piccolo came over to his son, Alex Farganis, Jr., that the two bumped chests, and that Piccolo spat in his son's face. Another witness testified that John Piccolo had to be physically moved back to his customary place in the ring by his twin brother, Augustino Piccolo. Farganis, Sr. testified that during the thirty-minute remainder of the trading session John Piccolo was verbally abusive and threatened the father and son with bodily harm when they "get outside."

After the close of market, the dispute spilled out onto the ramp and sidewalk outside the Exchange. According to Farganis, Jr., when he left the building after the close, either John Piccolo or John's twin was coming up the exit ramp toward him. Farganis, Jr., with his father directly behind him, assumed a defensive stance with one hand raised in front of himself and the other in a fist and shouted for John Piccolo to stay back and that he would defend himself. The Committee heard evidence that a large crowd of Exchange members had gathered outside the building and came between the Farganises and John Piccolo so they were separated and unable to make physical contact. Once on the sidewalk, the parties, restrained by the crowd, exchanged verbal obscenities.

It was at this time that Stephen Piccolo materialized and threw the first punch at Farganis, Jr.'s head; none of the witnesses had seen Stephen's approach. Farganis, Sr. testified that he then jumped on Stephen, they rolled to the ground, and a brawl involving more members of the crowd ensued.

Stephen Piccolo testified that he had gone outside after market's close in order to find a broker to address a customer who was unwilling to speak with him because he was merely a clerk. He claimed that he was physically attacked by the Farganises upon exiting the building and did not know why. He had not heard any of the remarks exchanged outside, was unaware of the dispute earlier in the coffee ring, and claimed that he did not throw a punch. The Committee found Stephen Piccolo's testimony not credible, in light of three witnesses' accounts that he had thrown the first punch. It also found no evidence to support Stephen's claim of self-defense. The Committee concluded by suspending Stephen Piccolo's registration for six months.

When the Commodity Futures Trading Commission considered his appeal,[2] it

---

2. Piccolo's quest for review of the initial decision by the Executive Floor Committee suspending him did not begin with the instant petition for review. After the decision issued, Piccolo's first step was to file a motion in the Supreme Court of the State of New York seeking an order to show cause to stay enforcement of the decision. The Exchange removed the state action to federal court, and Piccolo dismissed the motion pursuant to Fed.R.Civ.P. 41(a)(1). Piccolo thereafter filed notice of appeal from the decision with the CFTC. On December 20, 2002, the CFTC dismissed his appeal as untimely. *See Piccolo v.* *Coffee, Sugar & Cocoa Exchange, Inc.,* [2002–2003 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 29,254, CFTC Docket No. 03–B1, 2002 WL 31961428 (2002). Then, on January 10, 2003, Piccolo filed a petition for review by this Court of the CFTC's order dismissing his appeal as untimely. *Piccolo v. CSCE and CFTC,* No. 03–4069 (2d Cir.). That appeal was withdrawn on March 7, 2003, pursuant to a settlement reached between Piccolo and the CFTC, whereby the CFTC agreed to reinstate Piccolo's appeal to the CFTC and reach

summarily affirmed the decision without opinion, finding substantial evidence that Piccolo threw the first punch. *Piccolo v. Coffee, Sugar & Cocoa Exchange, Inc.,* [New Developments] Comm. Fut. L. Rep. (CCH) ¶ 29,553, C.F.T.C. Docket No. 03–E–1, 2003 WL 22382928 (2003). With respect to Piccolo's claims that the CSCE denied him procedural protections, misinterpreted the scope of CSCE Rule 3.21(c), and imposed an arbitrary sanction contrary to the weight of the evidence, the Commission concluded there was no error material to the outcome of the proceeding. *Id.*

## II. Discussion

Fundamental fairness requires a fair trial in a fair tribunal, *see In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955), with fair notice of the matters at issue and an opportunity to cross-examine witnesses, *see Joseph A. Giarritano,* [1990–92 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 25,132 at 38,250 & n. 8, C.F.T.C. Docket No. 88–E–10, 1991 WL 192568, at *3 & n. 8 (1991). In determining whether the Commission acted reasonably, this Circuit accords a "high degree of deference" to administrative agencies where their special expertise is implicated. *NLRB v. Rock Bottom Stores, Inc.,* 51 F.3d 366, 370 (2d Cir.1995) (internal quotation marks omitted).

■ Piccolo challenges the fundamental fairness of the Rule 3.21 proceeding for failing to extend the procedural protections normally applicable to disciplinary hearings. He claims the hearing notice failed to identify the "acts, practices, or conduct" at issue and to identify the Exchange rule allegedly violated, as required by CFTC Regulation 8.11, 17 C.F.R. § 8.11 (2004), and CSCE Disciplinary Rule

26.05. He claims that the denial of a continuance in order to obtain an attorney improperly denied his legal right to counsel in violation of CFTC Regulation 8.12, 17 C.F.R. § 8.12 (2004). He contends the Exchange failed to provide him with a witness list in accordance with CSCE Disciplinary Rule 26.12(c). Finally, he claims the Exchange Decision failed to state explicitly that Commission review was available, contrary to CFTC Regulation 9.11(b)(6), 17 C.F.R. § 9.11(b)(6) (2004).

The Exchange maintains that Piccolo's Rule 3.21 proceeding was not a disciplinary action subject to the requirements of Part 8 of the CFTC's Regulations and the CSCE's Disciplinary Rules. Indeed, Piccolo was not charged with violating any Exchange rules but, rather, was notified that a hearing was necessary to determine his fitness to remain registered under Rule 3.21 given his involvement in a physical altercation. The Exchange asserts that Exchange Disciplinary Rules apply only to investigations and adjudications initiated by the Exchange's Business Conduct Committee against an Exchange member or non-member market participant for Exchange rule violations. Resp't Br. at 26–27 (citing CSCE Disciplinary Rules 26.00(f), 26.01(a), and 26.03).

■ The issue of whether to pursue an action against a clerk under a Rule governing fitness for registration for the Exchange, rather than by pursuing disciplinary action, is a matter particularly within the competence and expertise of the agency, to which we must defer.

Rule 3.21 requires that notice of a suspension-of-registration proceeding merely state the "situation" giving rise to a need for action. In the circumstances of this case, notice that Piccolo had been involved

a decision on the merits regarding his six-

month suspension.

in a physical altercation was sufficient to permit him to prepare a defense.

The notice also informed Stephen Piccolo of his right to counsel, both in the body of the letter and in the attached Rule 3.21. Piccolo had eight days before the hearing to secure counsel, and yet chose to appear without an attorney. We find that the Panel did not abuse its discretion in denying the requested continuance. In any case, the record gives no indication that Stephen Piccolo was unduly prejudiced by his brother's presentation. John Piccolo effectively cross-examined witnesses, made objections, tried to impeach witnesses, and raised legal arguments about the Committee's jurisdiction.

Stephen Piccolo's contention that he should have been provided with a list of the six witnesses expected to be called, as required by Exchange Disciplinary Rule 26.12(c), fails because, by their terms, the Disciplinary Rules do not apply to suspension-of-registration proceedings against clerks.

The fact that the Exchange Decision omitted a Regulation 9.11(b)(6) statement explicitly advising Piccolo of the availability of Commission review was harmless error, because the Commission in fact ultimately considered and decided Piccolo's appeal.

As for Piccolo's argument that the Exchange lacked jurisdiction to suspend his clerk registration because CSCE Rule 3.21(c) and (d) authorize suspension only for activities occurring on Exchange property, the language of the Rule contains no such restriction. The rule instead appears to authorize the Exchange to suspend or terminate registration simply "upon learning of acts and circumstances suggesting that the continued registration of a clerk is contrary to the best interests of the Exchange." Rule 3.21(b). The rule imposes no substantive constraints on the Execu-

tive Floor Committee and the President, which "in their sole discretion shall determine whether ..., in the case of a registered clerk, to permit the registration of the clerk to continue." Rule 3.21(b). In sum, nothing in the language of the rule limits its application to events occurring on the Exchange floor.

We must also reject Piccolo's argument that the Committee's decision was against the weight of the evidence based on Piccolo's claim that he was in fact defending himself against the younger Farganis's aggressive behavior. The Executive Floor Committee specifically discredited Piccolo's testimony that he was acting in self-defense because it was contrary to the testimony of three Exchange witnesses and Piccolo's own testimony. Witnesses testified that the Farganises' behavior was directed solely toward Piccolo's two brothers, John and Augustino. Furthermore, Piccolo testified that he did not believe his brothers were in danger.

Piccolo's six-month suspension was specifically authorized by CSCE Rule 3.21, and we find that it was not against the weight of the evidence which showed that Piccolo punched Farganis and set off a brawl in which several Exchange members were injured.

## III. CONCLUSION

We affirm the Order of the Commodity Futures Trading Commission summarily affirming the six-month suspension of Piccolo's clerk registration.